on the docket, which we will hear oral argument momentarily. First of all, I'd like to advise counsel that you should assume that members of the panel have read the briefing in this case and have understood the arguments set forth therein, as well as the significant controlling authority cited in your briefs. We do have a lighting system up here, if you've noticed, is go. The yellow light is two minutes remaining in your time, and with the red light, we would ask that you please conclude your remarks, complete the sentence that you're in, unless there's a question from a member of the panel, in which case we'll allow you to complete your answer to the question. So we're going to go ahead and begin. Mr. Javier, you're going to argue on behalf of the plaintiff, Mr. Melancon, and for the record, this is case number 24-30232, Chad Melancon v. Bradley Walsh and others. Mr. Javier, you may begin. Good morning, Your Honors, and may it please the Court. My name is Roger Javier, and I, along with my co-counsel, Joe Piasun, we represent the appellant, Mr. Chad Melancon, and we ask that you reverse the decision of the trial court for two specific reasons. First, the facts asserted in our complaint, which must be accepted as true, demonstrate a valid cause of action, and second, there was no probable cause for the arrest. Factually and briefly, Your Honors, this is a case for a 1983 violation for false arrest, malicious prosecution, Monell, and other claims for which my client was arrested the day before New Year's in 2022, he spent five nights and six days in jail, and ultimately those charges were refused. In a related civil matter, what makes this case interesting is that in a related civil matter, prior to us filing this suit, we took the deposition of Officer Walsh. Now, our claim as to these defendants is founded on the fact that there was no probable cause for the arrest, and in this regard, Your Honors, there were a multitude of facts omitted from the arrest warrant, which, had they been included and presented to the court, they most certainly would have resulted in no arrest warrant. Those nine significant omissions which were testified to him are, one, Officer Walsh did not find that Melancon failed to perform work during a 45-day period at any time after he was receiving the payment. Two, he did not find that Melancon used an agent or an employee to fraudulently cause this person to enter the contract. Three, he did not find that our client damaged their property to induce the contract. Four, that he made a material misrepresentation for a permanent application. Five, that he made a misrepresentation concerning a lien. Oh, you're going through the parts of the statute, the specific enumerated examples in the statute, but the statute's broader than that, is it not? That's absolutely correct, Judge Wilson. It is broader than that, but those seven portions of the statute, and I'm glad you brought that up, what Officer Walsh testified to is that he didn't find any of that. So the remaining thing is just material misrepresentation or intentional taking. And it goes to my last two facts. Eight is Walsh testified he's not even aware of the value of the work done or the precise dollar figures which would have allowed for this felony charge. Well, but did he not know the allegation at least that the budget was $200,000 but the owner had paid $220,000? He assumed that that was the case, but in his deposition testimony he notes that in the record. He assumed it was the case. No, that's what the complainant that started this whole process had told him, right? That is correct, but what he also testified to importantly, Judge Wilson, is what happened in this case is that he did not know the nature of the work done nor the value. Does he have to? In this particular case, I would suggest to the court that the collective facts are important for the purposes of determining whether or not probable cause existed. Because when you look at that fact, Judge Wilson, and you compound it with the ninth fact, which he knew that there was a dispute between the alleged contractor regarding payment for additional renovations pursuant to a change order, which is why he was not back at the job, he failed to note that in the warrant. In other words, that is the fact that determines that he did not abscond with his money. And had those facts been included, the outcome would have been different. Now, Judge Lamell granted that motion to dismiss, not considering any of these facts, holding that the face of the warrant just demonstrated probable cause and such that there was no false arrest or Fourth Amendment violation. From there, everything else was dismissed. The failure to include this screams and implicates Franks v. Delaware, for which this was not included on brief because what I prepared last night, I found this case. A decision rendered by you, Judge Oldham, on May 3rd of this year, and I think you know the case, it's Hughes v. Garcia, Citation 100, Fed 4th, 611, I provided it to counsel this morning. In that decision, Judge Oldham and panelists, the charges were also refused and the trial court correctly denied the motion dismissed pursuant to qualified immunity of defense and it was appealed to your court. Judge Oldham, you started out that opinion by stating, quote, the very first sentence of that case, for those who worry that qualified immunity can be invoked under absurd circumstances, buckle up. I'm going to suggest that this court buckle up here too because none, and I repeat, none of those critical facts that I mentioned to you that Judge Wilson enumerated, knew about were analyzed by the trial court and that's clearly required. Further, in Hughes, when it's a motion to dismiss, the trial court is required to accept all the pleaded facts as true. Here, the trial court did none of that and yet it overlooked all of those prior material facts. Now, Judge Wilson, also a case I found, Anacuru v. City of Houston, I may be beating up the case, but the citations 990, Fed Third, 956, you actually wrote that the independent intermediary doctrine is not absolute and that an officer can still be held liable under Franks if the warrant affidavit, one, contains a false statement or material omission, two, is made with at least reckless disregard for the truth, and three, was necessary for the finding of probable cause. I didn't write that. I didn't write that standard law, but the problem is here, I mean, that doesn't mean that the defendant, the accused, gets to write the affidavit or rewrite it to his or her liking. No, but what the defendant is charged with is understanding what the facts of the case were, which he did, and not omit critical facts in his arrest warrant. So your argument is the affidavit to get the warrant was inadequate and it had omissions in it? A hundred percent. One of the things you argue is that the officer never talked to Mr. Melanzon about his side of the story. Where's your case that shows a Franks violation for an officer's failure to talk to the defendant or the accused? That's not a requirement under the law, Your Honor. Judge Wilson, you're not going to find one case that actually stands for the proposition that there is an absolute requirement to speak to the defendant prior to, you can actually go by the victim himself. But I'll tell you this, a hundred percent. That's what he did here. Yes, that is correct. He did, again, he did not interview our client, nor did he intend to. What we're showing there, Judge Wilson, is the facts. When you look at all the facts, and notably the most important fact, the testimony of the officer himself as to what he knew what was going on. And let me bring you right to that because that's the most clear violation of a Franks case is his testimony, Officer Walsh. If you look at record page 182, he testified as follows, question, Ms. Steele reported to you that there was a change order that had not been paid and that he, meaning Melanzon, wasn't coming back until it was paid. I'm paraphrasing here, but isn't that what she told you? Answer, correct. Question, so it appeared that Mr. Melanzon was taking the position that Ms. Steele still owed him money to complete the work before he was coming back. Answer, correct. Judge Wilson, Judge Engelhardt, Judge Oldham, what this testimony establishes is that Officer Walsh knew that there was no misappropriation or intentional taking. No matter how many of these facts that we look at, the fact that he only looked for his telephone number one time, he never left a message, he only tried to seek out with him one time, that's not necessarily the most critical. The seven enumerated items are not the most critical, but they do establish that there's not an automatic presumption for misappropriation or intentional taking. But I'll tell you what, in this case, that testimony 100% establishes that the officer, Officer Bradley Walsh, knew that our client was not coming back until he was paid. That takes this matter from criminal to a civil matter. Now, those facts were left out, and they, I mean, why were they left out? When someone's civil liberties are at stake, shouldn't those material facts be included? The actions, we believe, by Officer Walsh were either reckless and or intentional, and in either instance, the failure to include these facts and the trial court's failure to do a proper analysis, as well as whether or not probable cause exists with the inclusion of these critical facts, should result in a reversal decision of the trial court. Other things that are important, for example, in Hughes v. Garcia, while not probative to any ultimate legal conclusion, Judge Oldham, you found it interesting and concerning as to why the officers had to arrest Mr. Hughes at 3 a.m. when he was asleep with his wife. You stated, quote, judicial imagination cannot fathom why officers needed to trick an undressed Hughes into extending his arm through a cracked door so he could be forcibly arrested in his pajamas. In this case, Officer Walsh testified that the victim wanted my client to be picked up the day before New Year's, so he contacts Jefferson Parish, has him picked up to be away from his family on the New Year's holiday for six days. But as noted in our complaint, Officer Walsh did not find him to be a flight risk. Officer Walsh did not find him to be a danger to others. So why the need to take a man away? Counsel, let me ask you, you mentioned a minute or two ago, you said either willful disregard or intentional. And now you're making an argument that seems like there was some intent to injure based on the timing. Is there any evidence, what evidence is there in the record that this was not simply a substandard affidavit, which you've argued, a Franks violation, as opposed to something that is a little more malicious and more intentional? Is there any history between the plaintiff and the defendant that you've pled? There's no, aside from the relationship between contractor, are you talking as it relates to Officer Walsh? Yeah, yeah. And the victim itself, Walsh and Steele? Yes. We do not know. I mean, we just started off the complaint. So I do not have any independent knowledge as to whether or not- But you took a deposition, though. You mentioned earlier, you actually took a deposition in the related proceeding, correct? That's correct. Okay. Yeah, but there was nothing that was elicited at that time that we determined whether or not there was a relationship between the two. I'm just curious, since you used the word that it might possibly be intentional, and now you're arguing that the timing of it was particularly burdensome. I thought maybe there might be something that we were overlooking. No, no, you are not, Judge Anglehorn, but I will tell you this, though. That timing is important for purposes of when you look at other elements of a claim, such as damages. And because in our case, when this guy's not a flight risk, he's taken away from his family just because the victim says, call this guy and get him arrested. He does so. Is it law enforcement's job to consider flight risk in terms of the timing of an arrest? Isn't that something that the court would decide at an initial appearance? Not necessarily. The police officers do have a, when they're looking at, for purposes of executing a warrant, they make the independent determinations whether or not someone's going to be a flight risk in their own eyes, and whether or not he's a danger to society for purposes of picking up. So for example, in that particular instance, and I appreciate the question, Judge Anglehart, you have an individual that's accused of murder. You're going to do an APB, an all points bulletin. You're going to go ahead and tell all the surrounding parishes because he's a danger to others. So we want to figure this out. This guy, like the guy in Hughes, where he's accused of impersonating the officer, this guy is just a contractor. He's not a danger to others. So why the need to take him so expeditiously and quickly away from his family? And I would just suggest, and I was quoting Judge Oldham, because I would suggest to this court that judicial imagination can also not fathom why. I just don't know. This matter concerns strictly a financial dispute between a contractor and a homeowner for renovations for which there is a current civil lawsuit pending between these parties. Well, not to move you along in your argument, but I know one of the issues before us is the punitive damages. Is there anything other than what you've just told us that relates to the punitive damages claim? In other words, that elevates this claim beyond a qualified immunity issue based upon an improper arrest and it makes it something more. Thank you for the question, Judge Anglehart, yes. So what happens is when you do the court's analysis, if you look at the Frank's decision, if this court were to find there were a Frank's decision, by default, pursuant to this court's holding in Jones versus Connor, which I cited to in my brief, but it's 233 Fed 3rd 574, as relates to punitive damages, Walsh's conduct would absolutely meet the standards for punitive damages. So getting to the head of it, or the conclusion of it, Judge Anglehart, if you were to find a Frank's violation, by default we would have met the standards for punitive damages. Now, the rest of the facts that we were talking about, those collected facts, some of which were elicited by Judge Wilson, would be also demonstrative of all that compilation for the purposes of determining punitive damages. So, as it relates to opposing counsel's argument- Was there punitive damages at issue in Hughes? Refresh my memory. No, it was not. What's your best case, factually similar to this one, that would support a claim for punitive damages? The best case that was factually similar, that would be, is factually similar for the purposes of a legal conclusion. When you determine there is a Frank's violation, that you meet the standards for punitive damages, Jones versus Connor, 100%, okay? As relates to the brief, opposing counsel argues that Officer Walsh is not a legal technician, and he's not required to be. However, your honors, what's demanded of Officer Walsh is knowing what the law is when he's arresting someone for breaking it. And that lack of training and understanding actually screams Monell. And I'm going to actually touch upon Monell now, because I don't want to lose out on my time. I had it on my last argument, but that's okay. With regard to Monell, this court is aware, at the pleading stage alone, and that's where we are, guys. We're at the pleading stage. Only minimal factual allegations are required- Please don't refer to the panel as guys. Sorry, sorry, your honor, my apologies. Only minimal factual allegations are required to get passed a motion to dismiss. Moreover, Judge Wilson, you acknowledge in Anakuru, that case, that a municipality's failure to train officers can, without question, give rise to a 1983 violation. In this particular case, as relates to the training, Officer Walsh testified he received none. He testified one, he never took any courses in the areas of contractor fraud. Two, he is not a licensed contractor. Three, he's never worked in the field of contractor fraud as far as law enforcement is concerned prior to 2021. This thing happened just in 2022. And four, he testified that there's no guidelines in place as relating to contractor fraud. No standard operating procedures, no guidelines relating to financial crimes. But regardless of his lack of training, he was still put in the financial crimes division, and he even agreed to take over the division involving contractor fraud for St. Charles Parish Sheriff's Office. What's your best case law under Louisiana law involving the enforcement of this statute that would map onto this case? In what context, Judge Wilson? Well, I mean, are there other Louisiana courts that have dealt with this issue or construed this statute? The 1983 statute? No, no, not 1983, I'm talking about 14202.1. The statute, yeah. We cited to several of them in our brief as relates to the requirements of them, and there is a Louisiana Supreme Court that I cited off the top of my head. It's in my brief, but it's not at the top of my head right now. But what these cases do stand for, the proposition is everything that I mentioned to you previously. That as relates to the seven enumerated items, if we don't have that, then the fallback is to the intentional misrepresentation or intentional taking of money. And which we feel in this case, we have satisfied that there was none, because of the fact that Officer Walsh testified he knew that this was a dispute over monies. I appreciate the court's time and indulgence, and I thank you for allowing me to argue. And I apologize again, Judge. That's quite all right. Thank you, Mr. Javier. You've reserved three minutes for rebuttal. Yes, Your Honor. We'll hear now from Mr. Motterer on behalf of the appellees. Good morning, Your Honors. Steve Motterer on behalf of Bradley Walsh and Sheriff Greg Champagne. Wonderful questions already this morning. It goes right to the meat of it. Offenses can be both civil and criminal. This is one of them. But many crimes are civil and criminal. Homicide is a crime. Also can be a wrongful death. DWI can result into a car wreck. That's a crime. Also can be a civil tort. Assault is the same thing. This is exactly the same type of case that we have here today. It has, it's a crime, and it also could be a civil offense. But deputies are not in charge of determining defenses in criminal cases. They're there to investigate the facts, gather the facts, present them to a neutral magistrate for them to determine probable cause. That's exactly what we have here. And interestingly, and most importantly in our opinion, is that the main factual allegations in the complaint do not involve a false statement. There are no false statements alleged to be in the arrest report. The whole crux of this case is there were things omitted. Mr. Javier went through them. Seven of the nine that he talked about this morning, Judge Wilson, you are correct. Those are inferences. The statute is much broader than that. These are seven instances where the courts can infer that a crime had been committed. But it's not exclusive. It's not an enumeration. It's not an element. It's just seven instances where a court can infer. Mr. Javier concludes in the complaint that if those seven inferences would have been included in the arrest warrant, Judge Oquen would have denied the arrest warrant. That's a conclusion. The complainant also says, well, if we would have produced the supplemental report, Judge Oquen would have recalled the attachment. Interestingly, the supplemental report is not before this court. Interestingly, for whatever reason, it was never attached to any briefing. Could it be that the supplemental report wouldn't have helped the complainant in this case? Particularly because elements eight and nine, as argued about by my counsel this morning, actually appear in the arrest warrant. The complainant states in paragraph 13 of its complaint that the supplemental report acknowledged that he was alleging additional monies were due because of a change order. Paragraph 15 of the complaint, he says the presentation of that supplemental report to Judge Oquen would have recalled the attachment. So go to the arrest warrant. What was omitted? In the arrest warrant, it says, Steele advised that when she received her appliances, she contacted Melanson and asked if he had abandoned the project because he had not finished several things in the residence that she had paid for. Steele advised that Melanson responded with a change order and advised that if it wasn't paid, he would not bring his crew back to the residence to complete any work. Steele advised that she paid the requested $10,700 because she felt as that was her only way to get the work completed. But even after paying, no work had been finished. And it goes on. So to a- What was the day of the first meeting between Officer Walsh and the homeowner? I think it was December 12th. OK. It's noted in the arrest warrant if my memory is inaccurate. OK. So the problem that we have is the facts that we're accused of omitting actually exist in the warrant. And even if the enumerated inferences were included in the arrest warrant, Judge Oquen would have had the ability to deny the warrant and say, why didn't you address one through seven of these inferences? Removing them from the warrant, because they're not there to begin with, as Judge Lammel correctly said, it does not strip away the other elements of contractor fraud. Judge Lammel pointed to them. We pointed to them as well. Items that were billed for that were not properly installed, or if all, that's fraud. That's theft. That's a taking of something of value. The contract price was $200,000, yet $220,000 was paid. That could be fraud. That could be taking something of value. That could be theft. The cabinetry of purchase left over from a previous job and charged as a new purchase. That could be a deceptive practice to all elements of the criminal offense. And most importantly, because this is one of the inferences, a permit obtained by Mr. Melanson was for the roof replacement, yet part of his scope of work was for structural repairs. He did not have the appropriate permitting for this house. This does not rise to a Frank's violation. There's no false statements in it. Everything is in the application is true. It is what Deputy Walsh knew at the time. To go on and to rely upon a civil deposition taken in a case that is not related, because we are not parties to that civil litigation, is first not only an improper use of the deposition in violation of the rules, Code of Rules of Federal Civil Procedure. We're talking about a case in which a witness testifies where he's not a party. He's relying upon memory from over a year ago. And he's, in one instance, as I pointed out in my brief, the answer, the facts, actually reveal a yes answer and not no, such as the improper permitting. Moving on to Monell liability. Counsel, before we move off of this, can you help me understand why Mr. Molanson was arrested? And by that I mean, why was he held in custody? So I'm looking at the arrest warrant that the district judge issued. And it says you are further commanded to keep the said accused in safe custody until released according to law. And this should be your warrant. Is that the typical remedy for construction fraud in Louisiana? Where are you referring to? I'm sorry, this is at ROA 69. It's the arrest warrant issued by the district judge. And it's signed on the 27th day of December 2022 at 444 PM. And I'm just curious why Mr. Molanson would have to be arrested. I can understand, suppose I'm with you on everything else. Why would he have to be arrested and held in custody as opposed to the way you would handle. In Texas, we would call it a class C misdemeanor, but the sort of thing where it's like these are sort of fine only offenses. They may be criminal, but they don't involve being put in jail. I'm going to be speaking a little bit assumption-wise because I'm trying to, I would have to put on the judge hat, I guess, which I've never had an opportunity to wear. I don't know why Judge O'Quinn would have held for a particular period of time. Is that the typical remedy for construction fraud in Louisiana? It's the standard application for an arrest warrant. I don't believe, and I'm speaking because all of the rest warrants that I've seen, all of them have that language in it. It's a form on a computer. I don't think, to answer your question fairly, I don't think this applies directly to contractor fraud or any other offense. I think if it was a homicide, it would have been in there. Got it. When the judge reviews that application for the arrest warrant, they can make any changes to it or deny it and make anything. Maybe I should ask it this way. Are contractors typically held for six days in jail under this statute? Are you aware, maybe the other way? I don't have any knowledge of that in quite. Either way? So are you familiar of any case where someone was held for six days? Maybe typical is a loaded term. I think part of it, too, is, and this is knowledge that's outside of this record. It's just information that I know from practice, is you have a duty judge in St. Charles Parish. Judge O'Quinn was the duty judge. She signs applications for arrest warrants on certain particular days. And when she goes in to review them and has 72-hour hearings or whatever, that's up to the judiciary in St. Charles Parish to determine when that occurs. That does not have anything to do with, nor does the sheriff's office have any control over how long somebody is held in jail. We apply for the arrest warrant. If the court decides, agrees with us, that probable cause exists based on the facts alleged in the arrest warrant, which Judge O'Quinn agreed, she went and determined that there was, then the arrest warrant is live and can be acted on at any time. And so does the record reveal anything as to why Officer Walsh decided to execute it on the 30th of December, as opposed to the 28th or the 29th or January 2nd? The record doesn't reveal that. What the only thing was in a deposition, again, that was in an unrelated civil matter, because Mr. Moulinson lived in another parish, Deputy Moulinson had to enlist Jefferson Parish's involvement into executing the arrest warrant. Once that call was made, hey, I have this arrest warrant. Go pick him up whenever you want. Sergeant Walsh had no control over when that actual arrest actually took place. The Jefferson Parish Sheriff's Office could have arrested him at any moment after they received the copy of the arrest warrant in their possession. They could have arrested him immediately. They could have arrested him after the holiday. That was not within any of the control or discretion or ability of Sergeant Walsh and St. Charles Parish Sheriff's Office. We kind of don't have any control over that. Was he brought to the St. Charles Parish Jail? Is that where he was held? I can't remember. Yes. He was first brought to Gretna, to the Jefferson Parish Jail, and then transferred over to St. Charles Parish. So why six days? We went and got him the day that he was picked up in Jefferson Parish. I can't answer why Judge Oquin did not issue a release order or set a bond. That's something that's not in the Sheriff's Office control as to how long someone is held in jail. I was going to ask if there was some sort of policy or practice that the Sheriff's Office or the jail uses or something like that. I just don't know. No. Absolutely not. So I hope I was able to answer everyone's questions. Moving forward to next to the Monell liability, Your Honors, there's no pattern or practice established. There's no policy of the policymaker, Sheriff Champagne, put in place that's the moving factor as to why Mr. Melancon was arrested for contractor fraud. There is a lack of material facts to even give rise to the Monell claim. Judge LaMelle was correct in his decision in that regard. Judge Engelhardt, you asked a question regarding punitive damages, and you seemed quite focused on that, and I want to address that issue too. There are no material facts in the complaint regarding any intentional acts that Sergeant Walsh undertook. And I think it's interesting, and you asked this question, there's no relationship between Sergeant Walsh and Mr. Melancon in this record. There's none established. There's none in reality. It's not like there's no allegations or factual issues in the complaint that I needed to get him, I needed to set him up, I was doing this for a friend. There's no ulterior motive. There's no malice. Sergeant Walsh doesn't know this man. Whether he was arrested on a Monday or on a Friday was immaterial to him. He probably, I don't even think he's ever seen Mr. Melancon. There's certainly not anything in this record for the court to consider whether or not there was any ulterior motive or malice or anything like that on behalf of Sergeant Walsh as to Mr. Melancon. So with that fact, without any material facts, it doesn't rise to any reckless or callous indifference. There's no ulterior motive. Punitive damages, in my opinion, could never be awarded in this case, even if it was allowed to proceed. Since I have a couple more minutes, I just want to address a couple of the other issues. One of the malicious prosecution claims that the complainant speaks about, there's probable cause. There's no criminal proceeding. The district attorney refused the charges. He was never charged by a bill of information, and he never had to appear in front of Judge Oakland, and there was no criminal proceeding. And again, similar to the punitive damages argument, there's no malice. There's nothing in this record, nothing, that Sergeant Walsh had any ulterior motive or malice or intent. The only thing he did was do his job. So how often is this statute enforced this way? In which way? Well, I mean, just it seems remarkable to me that they're going to pick up a contractor in what is basically a dispute between homeowner and contractor under the statute. I just wonder how often is the statute enforced? Are there other cases? Kind of like what I asked counsel opposite. Are there other cases where, you know, something like this happened we could map onto this case? I do not have any statistics on that. There are no other cases that have reached any appellate courts that I'm aware of that addresses this issue. And quite frankly, you know, whether or not crimes are charged in criminal proceedings abroad is the sole discretion of the district attorney. In many jurisdictions, quite honestly, contractor fraud is not prosecuted by the district attorney. It does not mean it's not a crime. It does not mean that police officers can be derelict in their duties and not honor the constitutions of Louisiana and the United States that they swore an oath to and disregard that they are aware of a crime. They're there to investigate the crime. They're there to present elements of the crime to a neutral magistrate and to confirm their probable cause and present it to the charging authority of the district attorney to see if criminal charges are going to be brought. Whether or not the district attorney wants to prosecute those cases and whether or not the district attorney's office is overwhelmed with other more serious crimes, you know, that is something that's in their sole discretion. Yeah, I was just wondering if it's been done before or whatever. We didn't find any cases. We couldn't either. I mean, similar in New Orleans. New Orleans doesn't prosecute anybody for certain amounts of marijuana. You walk down by the federal courthouse and you can smell marijuana on a daily basis. Orleans, that's still a crime, but they don't prosecute it. Probably the scenario here is why the district attorney in St. Charles Parish decided not to prosecute was, it's a crime, I'm just not going to take my time and resources to prosecute it. That doesn't have anything to do with what Sergeant Walsh did. That doesn't have anything to do or have any effect with whether or not the facts that he put in his arrest warrant were false because they weren't. They're all 100% true and nobody has said that they weren't. The only issues is there's an alleged omission, which if the court panel did not pick up before today, I hope you picked up today. When I read to you from the arrest warrant that the sole complaint that I heard this morning, the critical omission, was that this was a civil dispute over a change order, is in the application for the arrest warrant. And if this was truly a civil matter that also did not have elements of a crime, Judge Oquen could have determined, no, there isn't probable cause and denied the arrest warrant. To the contrary, she found and agreed that Bradley Walsh, Sergeant Walsh, had probable cause that there were at least, I counted four, instances where there could be elements of theft, misappropriation, or unfair trade practices or deceptive practices that were factually supported in the arrest warrant. So for all of those reasons, Your Honors, we pray that you affirm the decision of Judge LaMalle. It was a well-written and considered decision. He evaluated and analyzed both Frank's and LaMalle's decisions and put his reasons for it. And we ask that you affirm. All right. Thank you, Counsel. Mr. Javier, you have three minutes if you'd like to respond. Thank you, Your Honors. When the opposing counsel says that this is civil, what was left out was actually what Walsh's understanding was. And I cite to his testimony on page 182 of the record, and it's contained there. Walsh already knew the reason why our client was not back at the job was because he wasn't going to send a crew back until he was paid. That's the testimony. Now, insofar as the use of the deposition, counsel argues that's improper, I would direct this Court's attention to the Fifth Circuit's case of battle versus battle. It's a fact-specific inquiry that considers whether the questioner is on the same side of the issue at both proceedings and whether the questioner had substantially similar interest in asserting and prevailing on the law. That's the standard for the use of the depositions, and we feel that the standard has been met here. When opposing counsel testified that Walsh just let the system play out, that's incorrect. Actually, Walsh testified that he was actually injected himself into this arrest. He actually testified that because the victim called him and wanted him arrested the day before New Year's, he called and had him arrested. That's injecting yourself, and that's not letting them play out. This is a contractor fraud issue. The way it would normally play out is if Mr. Melanson were stopped for, let's say, a traffic violation, they would see he's got an outstanding warrant. That's how it plays out. Or, of course, he was a murderer. Then they would do an APB, and they would be on the lookout for him actively. That didn't happen here. Now, he says there are many times where cases can be civil and criminal. We know this. Our position, though, is simply that it would be different in the criminal cases he cites, like a homicide or an assault. It would be interesting if the arresting officer said that, you know, I left out the fact that I didn't know that someone else fit the description of this defendant, and he didn't put that in the arresting affidavit. That's what's happening here. This involves an omission. What I didn't hear at any time from counsel is what's required in the Franks v. Delaware, which is a corrected affidavit analysis. The trial court was required to do one. It's nowhere inexistent in the judgment. That alone is fault, and it's not included in there. And for all of those reasons, we ask that you reverse the decision of the trial court. I thank the court for its time. All right. Thank you, counsel. We appreciate your presentations here today as well as the fine briefing that you've submitted in connection with this case. The court will take the matter under advisement and render a decision in due course. Court is adjourned for the day.